IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| vs. | : | CRIMINAL NO. 07-120 |
| | : | |
| RODNEY GREENE | : | |

**MEMORANDUM AND ORDER**

**Juan R. Sánchez, J.**                                                                                              **June 2, 2008**

Rodney Greene asks this Court to suppress papers, electronics, and a court seal taken from his apartment during a search in this case alleging mail fraud, identity theft, and forgery. Greene argues the information forming the probable cause basis for the search warrant was stale, the scope of the search exceeded the warrant, and no copy of the warrant or the inventory of seized items was left with him. The Government argues the affidavit was not stale because the investigation was ongoing and the warrant sought items expected to be saved. It further argues items purchased in other people's names and identified in the seized receipts fall within the scope of the warrant. Greene refused to sign for a copy of the warrant and inventory. I agree with the Government and will deny Greene's motion to suppress.

**FINDINGS OF FACT**

1.   Philadelphia Police Detective Frank Straup has been a fraud investigator for 10 of his 27 years on the Philadelphia police force.

2.   Det. Straup filed an affidavit reciting an investigation into a complaint by P.R.[1] that someone opened a Visa credit card account at Chase Credit Services in P.R.'s name. The account was

---

[1] I use initials to protect those whose only connection to the case is the use of their names.

opened in April 2005, P.R. was notified in August 2005, at which time Det. Straup opened his investigation.

3. In September 2005, Det. Straup received information regarding the fraudulent Visa application from Chase. Det. Straup continued his investigation, obtaining telephone records for the number listed on the application, tracking down the listed address, and tracing payments made on the Visa credit card to Western Union cash transfers to Greene.

4. Det. Straup also traced two outstanding traffic citations issued to P.R., who does not drive and has not been issued any citation, to a vehicle registered to Greene. On November 3, 2005, Det. Straup obtained a warrant to search 1308 Willow Avenue, C-322, Melrose Park, Cheltenham Twp., Greene's apartment.

5. The warrant identifies the things to be seized as: "all papers, documents, business records in the name of [P.R.], Visa card # . . .4354, any and all papers, documents, business records in any names other than those residing at this location. Proof of residency and occupancy."

6. Det. Straup and three other officers, one in uniform, executed the warrant the day it was issued. They knocked on the door, received no answer, and heard no noise inside. The building superintendent opened the apartment door for the officers.

7. The officers found Toye Greene in the living room and Rodney Greene coming out of the bedroom area.

8. Det. Straup could see a desk with a computer in the bedroom. After going over the warrant with Greene, examining the living room and kitchen for documents and finding none, Det. Straup entered the bedroom.

9. Det. Straup sat on the box which served as a chair at the computer and noticed an internet site to research a name with the opportunity to pay for more information showing on the computer screen.

10. Det. Straup said papers were stacked all around the bedroom.

11. Going through the documents, pursuant to the warrant, Det. Straup found credit cards, credit union and bank statements, a T-Mobile service agreement, a Sears receipt for a 26-inch Sharp television, and a receipt for the return of a PlaySation 2, all in P.R.'s name.

12. Det. Straup also found a driver's license in J.S.'s name with Greene's photograph affixed, J.S.'s Social Security card, credit card, debit card, bank letters regarding credit cards in J.S.'s name with Greene's address, an Experian credit report in J.S.'s name, a Bose customer card, and a Nautilius premier owner card, both in J.S.'s name.

13. Also seized were financial and personal documents in several other people's names.

14. In the papers seized were a Comcast bill in the name M.G. at the Willow Avenue address and a Bose credit account in the name of J.C.S. at the Willow Avenue address.

15. Matching the invoices to electronic items in the apartment, Det. Straup seized the Sharp television and the Bose sound system..

16. Det. Straup also seized were items obviously related to the process of identity theft: a Sony Picture Station and Sony video recorder; a Dell copier, monitor, and CPU; a Sharp fax machine; a Verifore credit card swipe recorder; and a hand stamp with the seal of the First Judicial District.

17. The seal of the First Judicial District was recovered from a locked box for which Greene reluctantly provided the key.

**DISCUSSION**

The Fourth Amendment[2] "forbids . . . not all searches and seizures, but unreasonable searches and seizures." *United States v. Ritter*, 416 F.3d 256, 261-62 (3d Cir. 2005) (citing *Elkins v. United States*, 364 U.S. 206, 222 (1960)).

Greene argues the seizures are void on three grounds: the warrant was stale and without particualrity, and the items seized exceeded the scope of the warrant. On a motion to suppress, the government bears the burden of showing each individual act constituting a search or seizure under the Fourth Amendment was reasonable. *Ritter*, 416 F.3d at 261. With regard to staleness, Greene argues the gap between P.R.'s complaint to the police in August and the issuance of the warrant in November, defeats the warrant's probable cause. One aspect of probable cause is the likelihood the items sought will be found in the place to be searched. *United States v. Tehfe*, 722 F.2d 1114, 1119 (3d Cir. 1983). It is not enough that the items may have been at the specified location at some time in the past, there must be probable cause to believe they are there when the warrant issues. *United States v. Urban*, 404 F.3d 754, 774 (3d Cir. 2005) (citing *Zurcher v. Stanford Daily*, 436 U.S. 547, 553-60 (1978)).

Greene suggests this case is analogous to *United States v. Zimmerman*, 277 F.3d 426 (3d Cir. 2002), in which a search for computer child pornography was conducted months after three children

---

[2]The Fourth Amendment provides:
> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

U.S. Const. amend. IV.   What the Constitution

4

alleged seeing adult pornography in their coach's home. *Id.* at 429. The Third Circuit in *Zimmerman* held, without evidence of ongoing criminal activity, the good faith exception did not apply and the warrant was invalid. *Id.* at 437.

The Government defends the warrant as seeking documents of a sort which would be preserved and the criminal activity as one which was ongoing. The likelihood the evidence sought is still in place depends on a number of variables, such as the nature of the crime, of the criminal, of the thing to be seized, and of the place to be searched. *United States v. Harris*, 482 F.2d 1115, 1119 (3d Cir. 1973). When an activity is of a protracted and continuous nature, "the passage of time becomes less significant." *Tehfe*, 722 F.2d at 1119 (quoting *United States v. Johnson*, 461 F.2d 285, 287 (10th Cir. 1972)).

Although the "[a]ge of the information supporting a warrant application is a factor in determining probable cause . . . [a]ge alone . . . does not determine staleness." *United States v. Harvey*, 2 F.3d 1318, 1322 (3d Cir.1993) (noting the speed with which information supporting a warrant becomes stale varies with the nature of the crime and the type of evidence). The Third Circuit has held "the mere passage of time does not render information in an affidavit stale where: (1) the facts suggest that the activity is of a protracted and continuous nature . . . and (2) the items to be seized were created for the purpose of preservation, e.g., business records . . ." *United Statues v. Yusuf*, 461 F.3d 374, 391-92 (3d Cir. 2006) (citations omitted).

When the information supporting a warrant suggests "repeated unlawful conduct over an extended period . . . [it] is more durable than information of discrete offenses." *United States v. Urban*, 404 F.3d 754, 774 (3d Cir.2005). Where "the items to be seized are created for the purpose of preservation, as are business records, the passage of time is also less significant." *United States*

*v. Ninety-Two Thousand Four Hundred Twenty-Seven Dollars and Fifty-Seven Cents ($92,422.57)*, 307 F.3d 137, 148 (3d Cir. 2002) (citation omitted).

In this case, the affidavit reflects a measured investigation without undue delay. The facts recited in the affidavit, obtaining and using a credit card under a false name, and using that false name in a traffic stop, suggest an ongoing criminal activity of the sort conducted over a period of time using documents intended to be preserved, rather than contraband which would be disposed of quickly. *Tehfe*, 722 F.2d at 1119. The pornography in *Zimmerman* is analogous to evidence of drug dealing rather than business records. The investigation in this case sought records created to be used over a period of time, more closely resembling business records than pornography or drugs. The pace of the investigation and the nature of the documents sought render the information supporting the warrant timely and not stale. *Harris*, 482 F.2d at 1119.

The second prong to Greene's challenge to the warrant is that it lacked the specificity required to satisfy the Fourth Amendment's particularity requirement. To prevent the police from conducting a general, exploratory rummaging, a warrant must give a particular description of the things to be seized. *Andresen v. Maryland*, 427 U.S. 463, 480 (1976). When documents show on their face evidence of criminal activity the search and seizure of these documents does not violate the Fourth Amendment. *United Sates v. Menon*, 24 F.3d 550, 563 (3d Cir. 1994). The word "all," in and of itself, does not render a warrant a general warrant. *United States v. Christine*, 687 F.2d 749, 753 (3d Cir. 1982). The warrant in this case reasonably sought all documents with other people's names and was not overbroad.

Greene's final argument is that the items seized during the search exceeded the scope of the warrant. Greene cites *United States v. Turner*, 169 F.3d 84 (1st Cir. 1999), in which police

conducting a consensual search for an assailant seized a computer in which they found child pornography.  Greene argues the electronic items were not obviously contraband and, thus, not subject to plain view analysis.  *United States v. Yamba*, 506 F.3d 251 (3d Cir. 2007).

An officer executing a search pursuant to a valid warrant may seize items in plain view which are obviously contraband.  *Horton v. California*, 496 U.S. 128, 142 (1990) ( holding "[t]he search was authorized by the warrant; the seizure was authorized by the 'plain-view' doctrine).  The warrant allowed police to seize any and all documents in other people's names.  The seized documents included customer cards for the Bose sound system in the name of J.C.S. and a receipt for the Sharp television in the name of P.R. Because the search revealed receipts for the electronics purchased with other people's identification, the electronics came within the scope of the warrant or, alternatively, became obviously contraband because they were purchased fraudulently.  The photographic duplicating equipment, the fax machine, the credit card swipe recorder, and the seal for the First Judicial District were in plain view and obviously contraband.

**CONCLUSIONS OF LAW**

1. The investigation proceeded at a methodical, timely pace, leading from information to warrant.
2. The warrant was not based on stale information because the documents were more like business records designed to be retained than cash or drugs more likely to be disbursed or concealed.
3. The warrant was not overbroad when it sought any and all docuemnts in the name of P.R. and any others as well as proof of occupancy of the apartment.
4.. The warrant allowed the search for all documents and papers seized.

5. The receipts in the names of other people for electronic equipment were in plain view during a legitimate search.

6. The inference the receipts were for the electronic equipment visible in the apartment is reasonable.

7. Electronic equipment purchased in other people's names is obviously contraband and may be seized.

8. The judicial seal, card reader, photographic duplicating equipment, and the fax machine were obviously contraband in plain view during a lawful search.

9. There is no reason to suppress the papers, the electronic equipment, or the hand stamp seized during the search of 1308 Willow Way, Cheltenham Township, on November 3, 2005. An appropriate order follows.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA : | |
| : | |
| vs. : | CRIMINAL NO. 07-120 |
| : | |
| RODNEY GREENE : | |

**ORDER**

And now, this 2nd day of June, 2008, Defendant's Motion to Suppress Physical Evidence (Document 25) is DENIED.

BY THE COURT:

\s\ Juan R. Sánchez
Juan R. Sánchez                    J.